1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10                 FOR THE DISTRICT OF OREGON

11                     PORTLAND DIVISION

12   JENNIFER WOLF,                    )
                                       )
13                 Plaintiff,          )
                                       )      No.  CV-10-296-HU
14       v.                            )
                                       )
15   RON WILSON CENTER FOR             )
     EFFECTIVE LIVING, INC., an        )
16   Oregon non-profit corporation,)         OPINION & ORDER
                                       )
17                 Defendant.          )
     _____)
18
     Kevin T. Lafky
19   LAFKY & LAFKY
     429 Court Street NE
20   Salem, Oregon 97301

21   Jon Weiner
     189 Liberty Street, NE, Suite 200
22   Salem, Oregon 97301

23        Attorneys for Plaintiff

24   Ronald G. Guerra
     JORDAN SCHRADER RAMIS PC
25   Attorneys at Law
     Two Centerpointe Drive, 6th Floor
26   Lake Oswego, Oregon 97035

27        Attorneys for Defendant

28   / / /

     1 - OPINION & ORDER

1  HUBEL, Magistrate Judge:

2      Plaintiff Jennifer Wolf brings this employment-related action

3  against her former employer, defendant Ron Wilson Center for

4  Effective Living, Inc.   Defendant moves to dismiss three of

5  plaintiff's claims for failure to state a claim.

6      Both parties have consented to entry of final judgment by a

7  Magistrate Judge in accordance with Federal Rule of Civil Procedure

8  73 and 28 U.S.C. § 636(c).   I grant the motion in part and deny it

9  in part.

10                          BACKGROUND

11     The facts are taken from the Complaint.   Defendant is a non-

12 profit corporation which operates various facilities providing

13 services to adults with developmental disabilities, including

14 residential care.   Compl. at ¶ 6.   Plaintiff was employed by

15 defendant as support staff in defendant's "supportive living"

16 department, from February 22, 2007, until December 30, 2009.   Id.

17 at ¶ 7.   She was assigned to one or more of defendant's residential

18 care facilities and generally worked full time.   Id. at ¶ 7.

19     In 2008, plaintiff took medical leave protected by the Family

20 and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601-2654, and Oregon's

21 Family Leave Act (OFLA), Oregon Revised Statutes §§ (O.R.S.)

22 659A.150-659A.186, due to a broken ankle.   Id. at ¶ 9.   That leave

23 ended on or about November 17, 2008.   Id.

24     When plaintiff returned to work on November 17, 2008, she was

25 not reinstated to her job.   Id. at ¶ 10.   Her work hours were

26 sharply reduced.   Id.

27     In response to what plaintiff believed to be a violation of

28 her rights under FMLA and OFLA, plaintiff retained an attorney who

2 - OPINION & ORDER

1  contacted defendant about the alleged violation.  Id. at ¶ 11.  In

2  January 2009, plaintiff and defendant resolved plaintiff's claim

3  for the FMLA and OFLA violations arising from plaintiff's 2008

4  medical leave.  Id. at ¶ 12.

5      On or about March 17, 2009, plaintiff commenced a second

6  medical leave protected by FMLA and OFLA related to her pregnancy.

7  Id. at ¶ 13.  Defendant terminated her on December 30, 2009.  Id.

8  at ¶ 13.

9      Based on these facts, plaintiff brings the following claims:

10     (1) Interference with FMLA rights, in which plaintiff contends

11  that defendant discharged her in retaliation for taking medical

12  leave to which she was entitled, and in retaliation for exercising

13  her right to reinstatement under FMLA; she further alleges that

14  defendant opposed her attempts to obtain unemployment benefits in

15  retaliation for taking medical leave to which she was entitled

16  under FMLA and in retaliation for exercising her right to

17  reinstatement under FMLA; Id. at ¶¶ 15-18;

18     (2)  Retaliation for engaging in protected FMLA activity, in

19  which plaintiff contends that she requested and took leave

20  protected by FMLA, and opposed conduct made unlawful under FMLA

21  when she opposed violation of her FMLA right to reinstatement;

22  defendant allegedly retaliated against her for engaging in this

23  protected activity, both when defendant fired her and when it

24  opposed her attempt to obtain unemployment benefits; Id. at ¶¶ 19-

25  21;

26     (3)  Violation of OFLA in which, based on the prior alleged

27  facts, plaintiff contends that defendant terminated her in

28  retaliation for taking medical leave to which she was entitled

3 - OPINION & ORDER

1  under OFLA and for opposing defendant's violation of her rights as

2  well as opposing her application for unemployment benefits; Id. at

3  ¶¶ 22-24;

4        (4)   Common law wrongful discharge, in which plaintiff

5  contends she was discharged for exercising job-related rights that

6  reflect an important public policy; Id. at ¶¶ 25-27;

7        (5)   Reckless infliction of emotional distress, in which

8  plaintiff alleges she had an employee-employer relationship with

9  defendant, that defendant recklessly engaged in the previously

10 alleged acts causing severe mental or emotional distress in various

11 forms, and that defendant's actions constituted an extraordinary

12 transgression of the bounds of socially tolerable conduct and

13 exceeded any reasonable limit of social toleration; Id. at ¶¶ 28-

14 31; and

15       (6) Intentional infliction of emotional distress, in which

16 plaintiff alleges that defendant knew the previously alleged

17 conduct would cause severe mental or emotional distress or acted

18 despite a high degree of probability that the mental or emotional

19 distress would result, that defendant's conduct in fact caused

20 plaintiff severe mental or emotional distress from the various

21 foreseeable highly unpleasant emotional reactions, and that

22 defendant's conduct was an extraordinary transgression of the

23 bounds of socially tolerable conduct or exceeded any reasonable

24 limit of social toleration.  Id. at ¶¶ 32-35.

25                            STANDARDS

26      On a motion to dismiss, the court must review the sufficiency

27 of the complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

28 All allegations of material fact are taken as true and construed in

4 - OPINION & ORDER

1  the light most favorable to the nonmoving party.  American Family

2  Ass'n, Inc. v. City & County of San Francisco, 277 F.3d 1114, 1120

3  (9th Cir. 2002).   However, the court need not accept conclusory

4  allegations as truthful.   Holden v Hagopian, 978 F.2d 1115, 1121

5  (9th Cir. 1992).

6        A motion to dismiss under Rule 12(b)(6) will be granted only

7  if plaintiff alleges the "grounds" of his "entitlement to relief"

8  with nothing "more than labels and conclusions and a formulaic

9  recitation of the elements of a cause of action[.]"   Bell Atlantic

10 Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation

11 omitted).   "Factual allegations must be enough to raise a right to

12 relief above the speculative level, . . . on the assumption that

13 all the allegations in the complaint are true (even if doubtful in

14 fact)[.]"   Id. at 1965 (citations and internal quotations omitted).

15       To survive a motion to dismiss, the complaint "must contain

16 sufficient factual matter, accepted as true, to state a claim to

17 relief that is plausible on its face[,]" meaning "when the

18 plaintiff pleads factual content that allows the court to draw the

19 reasonable inference that the defendant is liable for the

20 misconduct alleged."   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

21 (2009) (internal quotation and citation omitted).   Additionally,

22 "only a complaint that states a plausible claim for relief survives

23 a motion to dismiss."   Id. at 1950.   The complaint must contain

24 "well-pleaded facts" which "permit the court to infer more than the

25 mere possibility of misconduct."   Id.

26                              DISCUSSION

27      Defendant moves to dismiss the three non-statutory claims of

28 wrongful discharge, reckless infliction of emotional distress, and

   5 - OPINION & ORDER

1  intentional infliction of emotional distress.

2  I.  Wrongful Discharge

3      Defendant moves to dismiss this claim on the basis that

4  plaintiff has adequate statutory remedies under FMLA and OFLA.

5  Many cases from this Court recognize that under Oregon law, there

6  is no right to a common law wrongful discharge claim if existing

7  statutory remedies adequately protect the employment-related right.

8  E.g., Whitley v. City of Portland, 654 F. Supp. 2d 1194, 1224 (D.

9  Or. 2009).   Thus, generally, if an adequate statutory remedy

10 exists, a common law wrongful discharge claim based on the same

11 conduct is precluded.  Reid v. Evergreen Aviation Ground Logistics

12 Enters., No. CV-07-1641-AC, 2009 WL 136019, at *16 (D. Or. Jan. 20,

13 2009).

14      Defendant argues that plaintiff's wrongful discharge claim is

15 precluded by FMLA and OFLA because the statutory relief provided by

16 those statutes is as broad as the relief provided by the common law

17 wrongful discharge claim.

18      Defendant's position is not supported by other cases from this

19 Court.  Most recently, Judge Papak, in a Findings & Recommendation

20 adopted by Judge Brown, noted that under FMLA, a plaintiff is not

21 entitled to emotional distress damages and that the lack of such

22 damages "makes the statutory remedy inadequate because it fails to

23 'capture the personal nature of the injury done to a wrongfully

24 discharged employee as an individual.'"  Maxwell v. Kelly Servs,

25 Inc., No. CV-09-405-PK, 2010 WL 2720730, at *13-14 (D. Or. July 7,

26 2010) (quoting Earnest v. Georgia-Pacific Corp., No. CV-07-1559-KI,

27 2008 WL 5111104, at *9 (D. Or. Nov. 25, 2008)).  Thus, because the

28 plaintiff was seeking emotional distress damages, Judge Papak

6 - OPINION & ORDER

1 allowed the plaintiff to pursue a wrongful termination claim

2 arising from the allegations that her former employer terminated

3 her employment in retaliation for taking family medical leave, or

4 for demanding reinstatement following her leave.  Id. at *14.

5     In Earnest, the case relied on by Judge Papak, Judge King in

6 turn relied on an earlier case by Judge Ashmanskas to conclude that

7 the lack of emotional distress damages under FMLA and OFLA made the

8 statutory remedies inadequate.  Earnest, 2008 WL 5111104, at *9

9 (citing Rush v. Oregon Steel Mills, No. CV-06-1701-AS, 2007 WL

10 2417386 (D. Or. Aug. 17, 2007)).  Judge King agreed with the

11 analysis in Rush and adopted it as his own.  Id.

12     Defendant argues that no court has ever specifically held that

13 a statute must provide for every single kind of remedy that would

14 be available at common law and that in fact, the Oregon Court of

15 Appeals found the statutory remedy under O.R.S. 659.410(1),

16 prohibiting worker's compensation retaliation, to be exclusive

17 because the legislature's adoption of "virtually all remedies that

18 would have been available at common law lead us to conclude that it

19 intended the statutory remedy to be exclusive."  Farrimond v.

20 Louisiana-Pacific Corp., 103 Or. App 563, 567, 798 P.2d 697, 699

21 (1990).  Here, defendant argues, because FMLA and OFLA provide

22 "virtually all" remedies that would have been available under

23 common law, that is sufficient to preclude her wrongful discharge

24 claim.

25     At the relevant time, the statute at issue in Farrimond capped

26 punitive damages at $2,500.  Id. at 567 n.4, 798 P.2d at 699 n.4.

27 The statute still entitled the plaintiff to a jury trial, to obtain

28 equitable remedies of injunction and reinstatement with back pay,

7 - OPINION & ORDER

1    and to obtain compensatory and punitive damages (up to the limit).

2    Id. at 567, 798 P.2d at 699.  Thus, the statute provided "virtually

3    all" the remedies available at common law.

4         Notably, the statute at issue in Farrimond allowed the

5    plaintiff to recover emotional distress damages, which, as the

6    cases from this Court note, "capture the personal nature of the

7    injury."  Thus, Farrimond is easily distinguishable.

8         I agree with the other judges in this Court and conclude that

9    because FMLA and OFLA do not allow for emotional distress damages,

10   which is a component of the damages plaintiff seeks in this case,

11   her common law wrongful discharge claim is not precluded.  Thus, I

12   deny the motion to dismiss this claim.

13   II.  Reckless Infliction of Emotional Distress (RIED)

14        Defendant moves to dismiss this claim contending that Oregon

15   courts do not recognize it.  In Davis v. Pacific Saw & Knife Co.,

16   No. CV-08-676-HU, 2008 WL 4319981, at *3 (D. Or. Sept. 16, 2008),

17   I held that "[t]here is no cognizable claim under Oregon law for

18   reckless infliction of emotional distress." Id. (citing Snead v.

19   Metropolitan Property and Cas. Co., 909 F. Supp. 775, 779 (D. Or.

20   1996)).

21        Opinions issued by other judges in this Court have recognized

22   a narrow set of circumstances in which a RIED claim is, in fact,

23   cognizable.  Judge Aiken recently explained that:

24       Oregon law allows recovery of damages for reckless
         infliction of emotional distress under three specific
25       circumstances.  See, e.g., Navarette v. Nike, Inc., No.
         05-1827, 2007 WL 221865, at *4 (D. Or. Jan. 26, 2007)
26       (discussing when damages may be recovered for RIED in
         Oregon).  First, a plaintiff may recover under RIED when
27       accompanied by physical injury.  Drake v. Mut. of
         Enumclaw Ins. Co., 167 Or. App. 475, 487, n. 3, 1 P.3d
28       1065 (2000).  Second, "Oregon allows recovery for

8 - OPINION & ORDER

1
2
3
4
5
6
7
8

> emotional distress without accompanying physical injury under narrow circumstances, including when a defendant's conduct infringes on a plaintiff's legally protected interest." <u>Rathgeber v. Hemenway, Inc.</u>, 335 Or. 404, 414, 69 P.3d 710 (2003). Third, a plaintiff may recover under either reckless or negligent infliction of emotional distress in circumstances where there is a duty to protect against psychological harm. <u>See</u> <u>Id.</u> (discussing duty to protect from emotional harm in malpractice context) (citing <u>Curtis v. MRI Imaging Servs.</u>, 327 Or. 9, 14-15, 956 P.2d 960 (1998)); <u>Simons v. Beard</u>, 188 Or. App. 370, 376, 381-82, 72 P.3d 96 (2003); <u>Shin v. Sunriver Preparatory Sch., Inc.</u>, 199 Or. App. 352, 368-69, 111 P.3d 762 (2005) (school owed a heightened duty of care to student to protect from negligently inflicted emotional harm).

9
10

<u>Dawson v. Entek Int'l</u>, 662 F. Supp. 2d 1277 (D. Or. 2009).

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Here, plaintiff fails to identify her theory of recovery for the RIED claim. There is no allegation of physical injury. The Complaint alleges no "legally protected interest." Moreover, cases discussing RIED claims in Oregon, such as <u>Rathgeber</u>, <u>Drake</u>, and <u>Hammond v. Central Lane Commc'ns Ctr.</u>, 312 Or. 17, 816 P.2d 593 (2003) do not provide guidance for interpreting "legally protected interest," and so, do not discuss the required type of such an interest or any limits on such an interest. In fact, while these three cases note the existence of the "legally protected interest" prong of a RIED claim, none found a basis to support it. Furthermore, I agree with Judge Ashmanskas's discussion in <u>Navarette</u> that "[i]n the wake of <u>McGanty [v. Staudenraus</u>, 321 Or. 532, 901 P.2d 841 (1995)], a special relationship between the parties, such as employer-employee, is no longer a basis upon which recovery may be had for RIED." <u>Navarette</u>, 2007 WL 221865, at *3. Finally, there is no allegation of a duty to protect against psychological harm.

A RIED claim without physical injury is allowed under a very

28

9 - OPINION & ORDER

1  particular set of facts and is recognized only in very narrow

2  circumstances.  The facts as asserted by plaintiff in support of

3  this claim are do not state a recognized basis for the claim.  I

4  grant defendant's motion as to the RIED claim.

5  III.  Intentional Infliction of Emotional Distress (IIED)

6      Defendant moves to dismiss this claim on the basis that

7  plaintiff fails to establish that defendant's acts constitute an

8  extraordinary transgression of the bounds of socially tolerable

9  conduct.

10     To sustain an IIED claim, plaintiff must show that defendant

11 intended to inflict severe emotional distress, that defendant's

12 acts were the cause of plaintiff's severe emotional distress, and

13 that defendant's acts constituted an extraordinary transgression of

14 the bounds of socially tolerable conduct. McGanty, 321 Or. at 563,

15 901 P.2d at 849; see also Babick v. Oregon Arena Corp., 333 Or.

16 401, 411, 40 P.3d 1059, 1063 (2002) (to state an IIED claim under

17 Oregon law, plaintiff must prove, inter alia, that defendants'

18 actions "constituted an extraordinary transgression of the bounds

19 of socially tolerable conduct.") (internal quotation omitted).

20     Conduct that is merely "rude, boorish, tyrannical, churlish,

21 and mean" does not support an IIED claim.  Patton v. J.C. Penney

22 Co., 301 Or. 117, 124, 719 P.2d 854, 858 (1986).  "[T]he tort does

23 not provide recovery for the kind of temporary annoyance or injured

24 feelings that can result from friction and rudeness among people in

25 day-to-day life even when the intentional conduct causing

26 plaintiff's distress otherwise qualifies for liability."  Hall v.

27 The May Dep't Stores Co., 292 Or. 131, 135, 637 P.2d 126, 129

28 (1981); see also Watte v. Maeyens, 112 Or. App. 234, 237, 828 P.2d

10 - OPINION & ORDER

1  479, 480-81 (1992) (no claim where employer threw a tantrum,

2  screamed and yelled at his employees, accused them of being liars

3  and saboteurs, then fired them all); Madani v. Kendall Ford, Inc.,

4  312 Or. 198, 205-06, 818 P.2d 930, 934 (1991) (no claim where

5  employee terminated for refusing to pull down pants).

6      In a 2008 case, the Oregon Court of Appeals explained the

7  following parameters of the tort:

8          A trial court plays a gatekeeper role in evaluating
       the viability of an IIED claim by assessing the allegedly
9      tortious conduct to determine whether it goes beyond the
       farthest reaches of socially tolerable behavior and
10     creates a jury question on liability. . . .

11     * * *

12     The classification of conduct as "extreme and outrageous"
       depends on both the character and degree of the conduct.
13     As explained in the Restatement at § 46 comment d:

14         "Liability has been found only where the conduct
           has been so outrageous in character, and so extreme
15         in degree, as to go beyond all possible bounds of
           decency, and to be regarded as atrocious, and
16         utterly intolerable in a civilized community."

17         Whether conduct is an extraordinary transgression is
       a fact-specific inquiry, to be considered on a
18     case-by-case basis, based on the totality of the
       circumstances. We consider whether the offensiveness of
19     the conduct exceeds any reasonable limit of social
       toleration, which is a judgment of social standards
20     rather than of specific occurrences.

21 House v. Hicks, 218 Or. App. 348, 358-60, 179 P.3d 730, 737-39

22 (2008) (internal quotations and citations omitted), rev denied, 345

23 Or. 381 (2008).

24     Plaintiff argues that the following allegations meet the

25 standard: (1) she was discharged in retaliation for taking medical

26 leave to which she was entitled under FMLA, and in retaliation for

27 exercising her right to reinstatement under FMLA; (2) defendant

28 opposed her attempts to obtain unemployment benefits in retaliation

11 - OPINION & ORDER

1   for taking medical leave to which she was entitled under FMLA, and

2   in retaliation for exercising her right to reinstatement under

3   FMLA; and (3)  she settled a previous FMLA dispute with defendant

4   and was subject to retaliation as a result of the exercise of her

5   rights that led to that settlement.

6       Plaintiff argues that her allegations show "long-term"

7   discriminatory and retaliatory conduct that continued beyond the

8   date of plaintiff's discharge and included not only an attempt to

9   deprive her of her livelihood, but also an attempt to deprive her

10  of the unemployment benefits she needed to survive.  Moreover, she

11  notes, defendant did so with the full knowledge that she was a new

12  mother, just back from OFLA and FMLA protected leave, and in the

13  context of what she alleges is a recognized "special" employer-

14  employee relationship.  Plaintiff contends that these allegations

15  state a claim for IIED because these are special circumstances

16  which amount to more than "they discharged me because of my

17  protected status."

18      McGanty made clear that the employer-employee relationship was

19  not relevant to the intent element of an IIED claim. McGanty, 321

20  Or. at 547-48, 901 P.2d at 850-51.  But, as plaintiff noted at oral

21  argument, post-McGanty cases indicate that the employer-employee

22  relationship is relevant to the element of the claim examining the

23  level of conduct necessary to sustain the tort. E.g., Clemente v.

24  State, 227 Or. App. 434, 442, 206 P.3d 249, 255 (2009) ("the courts

25  are more likely to consider behavior outrageous if it is inflicted

26  on the more vulnerable partner in a 'special relationship' such as

27  employer-employee."); House, 218 Or. App. at 360, 179 P.3d at 737

28  (noting that "precedents identify several contextual factors that

12 - OPINION & ORDER

1  guide the court's classification of conduct as extreme and

2  outrageous[,]" the most important of which is "whether a special

3  relationship exists between a plaintiff and a defendant, such as an

4  employer-employee[.]").

5      Nonetheless, it remains that Oregon courts have been "very

6  hesitant to impose liability for IIED claims in employment

7  settings, even in the face of serious employer misconduct."

8  Robinson v. U.S. Bancorp, No. CV-99-1723-ST, 2000 WL 435468, at *8

9  (D. Or. Apr. 20, 2000).  As the Clemente court explained:

> In every case in which this court or the [Oregon] Supreme
> Court has allowed an IIED claim asserted in the context
> of an employment relationship to proceed to a jury, the
> employer engaged in conduct that was not only
> aggravating, insensitive, petty, irritating, perhaps
> unlawful, . . . and mean-it also contained some further
> and more serious aspect.  In some cases, the employer
> engaged in, or credibly threatened to engage in, unwanted
> physical contact of a sexual or violent nature.  E.g.,
> Lathrope-Olson, 128 Or. App. at 407-08, 876 P.2d 345;
> Franklin v. PCC, 100 Or. App. 465, 471-72, 787 P.2d 489
> (1990).  Employers in other cases repeatedly used
> derogatory racial, gender, or ethnic slurs, usually
> accompanied by some other aggravating circumstance.
> E.g., Whelan v. Albertson's, Inc., 129 Or. App. 501,
> 504-06, 879 P.2d 888 (1994); Franklin, 100 Or. App. at
> 471-72, 787 P.2d 489.  In yet other situations, the
> employer exposed the plaintiff to actual physical danger.
> E.g., Babick, 333 Or. at 413-14, 40 P.3d 1059; MacCrone
> v. Edwards Center, Inc., 160 Or. App. 91, 100-01, 980
> P.2d 1156 (1999), vacated on other grounds, 332 Or. 41,
> 22 P.3d 758 (2001).  In Schoen v. Freightliner LLC, 224
> Or. App. 613, 615-20, 629, 199 P.3d 332 (2008), the
> employer repeatedly subjected the plaintiff to verbal
> abuse, forced her to do work from which she was medically
> exempted, and forced her to engage in illegal conduct.

Clemente, 227 Or. App. at 442-43, 206 P.3d at 255 (footnote

omitted).

     Here, the allegations fail to establish that any such

extraordinarily outrageous aggravating factors occurred.  Plaintiff

was not verbally, sexually, or physically abused or harassed. There

13 - OPINION & ORDER

1   was no name-calling.  She was not exposed to violence.  She was not

2   repeatedly and viciously ridiculed.  Instead, according to the

3   Complaint, she was subjected to repeated discriminatory treatment,

4   retaliation, and post-discharge retaliation in the form of the

5   challenge to her application for unemployment benefits.  Even in

6   the context of an employment relationship, these allegations are

7   insufficient.  I grant the motion to dismiss the IIED claim.

8                              CONCLUSION

9       Defendant's motion to dismiss [10] is granted as to the RIED

10  and IIED claims, and is denied as to the wrongful discharge claim.

11      IT IS SO ORDERED.

12                  Dated this  8th   day of November    , 2010.

13

14

15                           /s/ Dennis James Hubel
                             Dennis James Hubel
16                           United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

14 - OPINION & ORDER